804 So.2d 1052 (2001)
Carl RAMBUS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-02104-COA.
Court of Appeals of Mississippi.
May 22, 2001.
Rehearing Denied August 7, 2001.
Certiorari Denied January 17, 2002.
*1055 Mark Andrew Cliett, Cliett, Witthauer & McRae, PLLC, West Point, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Jr., Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and LEE, JJ.
BRIDGES, J., for the court:
¶ 1. This case comes from the Circuit Court of Clay County, Honorable Lee J. Howard presiding. Carl Rambus was tried and convicted of the sale of a controlled substance within 1500 feet of a church. Rambus comes to this Court appealing his conviction on the basis of several issues:
1. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR A MISTRIAL AND SUBSEQUENTLY OVERRULING THE DEFENDANT'S MOTION FOR JNOV BASED UPON THE IMPROPER STATEMENTS ELICITED FROM DEPUTY JOE HUFFMAN?
2. WHETHER THE COURT ERRED IN ALLOWING THE ENTIRE VIDEOTAPE TO COME INTO EVIDENCE ON REBUTTAL?
3. WHETHER THE COURT ERRED IN REFUSING TO ALLOW JURY INSTRUCTION D-1 AND FURTHER ERRED IN ALLOWING THE DEFENDANT'S MOTION FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
4. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTION TO THE STATE'S MOTION TO AMEND THE INDICTMENT TO REFLECT HABITUAL OFFENDER STATUS UNDER MISSISSIPPI CODE ANNOTATED SECTION 99-19-83?
5. WHETHER THE COURT ERRED IN ALLOWING THE STATE TO MAKE AN IMPROPER CLOSING ARGUMENT?
6. WHETHER THE REPRESENTATION OF THIS DEFENDANT BY HIS TRIAL ATTORNEY WAS INEFFECTIVE?
Finding no error, we affirm.

FACTS
¶ 2. On April 29, 1997, the Mississippi Bureau of Narcotics conducted an operation *1056 in Clay County in which a confidential informant was to purchase cocaine. Craig Taylor of the Mississippi Bureau of Narcotics conducted the operation's surveillance while the confidential informant, a man named LaKota Whitefoot, purchased the cocaine. Whitefoot had worked for the Mississippi Bureau of Narcotics as a buyer before. Joe Huffman, a sheriff's deputy from Clay County, was also involved in the operation. Upon arrival, Whitefoot and his car were searched. Whitefoot was then wired for audio transmission and his car was equipped with video recording equipment. Whitefoot was given money with which to make the buy, and then he headed out to Cottrell Street to make the buy. Whitefoot was to buy forty dollars worth of crack cocaine. The law officers monitored Whitefoot from a grocery store at the intersection of Highway 50 and Cottrell Street.
¶ 3. While searching for a seller on Cottrell Street, Whitefoot met Carl Rambus. Whitefoot purchased forty dollars worth of crack cocaine from Rambus. Whitefoot made several other purchases, and after making the purchases Whitefoot met with the officers. Whitefoot gave the officers the crack cocaine and the video tape from his car. At trial, Whitefoot testified he had bought no marijuana that night, only cocaine. Whitefoot further testified the purchase he made from Rambus was near a church. Whitefoot also identified the video taken of the purchases he made on the night in question.
¶ 4. Besides Whitefoot, the State presented several other witnesses. Edwina Ard, who works for the Tupelo crime lab, verified the substance Rambus sold was indeed cocaine. Tim Hamilton, who works for the Mississippi Bureau of Narcotics, testified he delivered the substance given to him by Joe Huffman to the crime lab. In addition, Tim Hamilton and Joe Huffman testified to the events they observed on the night in question.
¶ 5. The defense called three witnesses: Ronnie Dean Bennett, Frederick Vance, and Taveris Collins. Bennett testified he was standing in the background and saw Rambus sell Whitefoot marijuana, not cocaine. Vance and Collins testified to the same thing. All three were serving jail time when they testified. Collins and Vance both admitted they were friends with Rambus, and neither one of them could testify to what either Rambus or Whitefoot were wearing on the night in question. Vance could not identify the truck Whitefoot was driving, and Collins admitted they were on Cottrell Street on the day in question to sell cocaine. On rebuttal, the State proved Bennett had previously stated he did not know anything about the sale, but Bennett claimed those statements were lies. During rebuttal, the State offered into evidence the video tape of all the purchases Whitefoot made to prove Whitefoot did not buy anything but crack cocaine on the night in question.

STATEMENT OF THE LAW

STANDARD OF PROOF
¶ 6. The decision to grant a mistrial is solely in the sound discretion of the trial judge, and to prove a mistrial should have been granted one must prove failure to grant a mistrial was an abuse of this discretion. Cook v. State, 728 So.2d 117, (¶ 12) (Miss.Ct.App.1999).
¶ 7. "Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion." Dobbs v. State, 726 So.2d 1267(¶ 25) (Miss.Ct.App.1998).
¶ 8. A motion for a directed verdict and a motion for JNOV challenges the sufficiency of the evidence. The standard of review for a challenge to the sufficiency *1057 of the evidence is stated in McClain v. State, 625 So.2d 774, 778 (Miss.1993):
In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence ... consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
(citations omitted); see also Williams v. State, 595 So.2d 1299, 1302 (Miss.1992); Heidel v. State, 587 So.2d 835, 838 (Miss. 1991); Roberts v. State, 582 So.2d 423, 424 (Miss.1991).
¶ 9. A motion for a new trial is left to the circuit court's discretion and raises issues regarding the weight of the evidence. Jackson v. State, 551 So.2d 132, 148 (Miss.1989). The standard of review for a challenge to the weight of the evidence is found in Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989):
In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.
See also Isaac v. State, 645 So.2d 903, 907 (Miss.1994); Newsom v. State, 629 So.2d 611, 615 (Miss.1993); Burrell v. State, 613 So.2d 1186, 1190-91 (Miss.1993); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss.1992); Parker v. State, 606 So.2d 1132, 1139-40 (Miss.1992).
¶ 10. An indictment can be amended when the amendment goes to form and not to substance. Burson v. State, 756 So.2d 830 (¶ 14) (Miss.Ct.App.2000). The test to apply in determining whether an amendment goes to form or substance is: "[w]hether the defense as it originally stood would be equally available after the amendment is made." Eakes v. State, 665 So.2d 852, 859-60 (Miss.1995).
¶ 11. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State. 777 So.2d 659 (¶ 7) (Miss. 2001).
¶ 12. The standard to be applied in claims of ineffective assistance of counsel is well known. The defendant must prove his attorney's performance was defective and the deficiency deprived the defendant of a fair trial. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). This deficiency is assessed by looking at the totality of the circumstances. Id. There is also a strong presumption the attorney's conduct fell within the wide realm of reasonable professional assistance, and this review is highly deferential to the attorney. Id.

ANALYSIS

1. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR A MISTRIAL AND SUBSEQUENTLY OVERRULING THE DEFENDANT'S MOTION FOR JNOV BASED UPON THE IMPROPER STATEMENTS ELICITED FROM DEPUTY JOE HUFFMAN?
¶ 13. Rambus raises this issue because of two statements elicited during the testimony *1058 of Joe Huffman which Rambus claims were a sufficient basis for a mistrial. The first statement was a reference Huffman made to the fact this was Rambus's second trial, thereby making improper reference to the first trial. The second statement was Huffman testified the confidential informant was threatened by some of the witnesses during a lunch recess. Rambus claims the State purposely elicited these statements. The State argues the prosecutor did not purposely extract this testimony, but Huffman answered the questions in a way not purposely sought. The State also points out it was not Huffman who made the comment about Whitefoot being threatened, but it was Whitefoot himself.
¶ 14. Upon review of the record, this Court noticed when these questions were asked and answered, Rambus's attorney objected to the answers given. These objections were both sustained by the trial court, and the judge admonished the jury both times to disregard what they had just heard. Mississippi case law "conclusively places the decision as to the grant or denial of a mistrial within the sound discretion of the trial judge, and holds an admonition such as that given below sufficient to remove any prejudice resulting from improper testimony in those instances where the decision to proceed is made." Cook v. State, 728 So.2d 117(¶ 12) (Miss.Ct. App.1999). Because the grant of a mistrial is within the discretion of the trial court, failure to grant such a mistrial would have to be proven to be an abuse of discretion in order to overrule the trial court's decision. This Court finds nothing in this case amounting to an abuse of discretion. The trial judge took away any prejudicial effect these statements might have had by telling the jury to disregard them. Since there was no danger of prejudice, then there was no abuse of discretion. For this reason, we affirm the trial court's decision to deny Rambus a mistrial.

2. WHETHER THE COURT ERRED IN ALLOWING THE ENTIRE VIDEOTAPE TO COME INTO EVIDENCE ON REBUTTAL?
¶ 15. The second issue Rambus raises in this case is whether the entire videotape of all of the drug purchases Whitefoot made on the night in question should have been allowed into evidence on rebuttal. Rambus makes this claim on the basis the tape of all the purchases was not provided to him during discovery, it violates his right to a fair trial, and it somehow violates his right to confront witnesses.
¶ 16. It is important to lay out the facts surrounding this issue. There were two video tapes made in this case. The first was the original videotape of all of the drug transactions Whitefoot was involved in on April 29, 1997. This included the purchase from Rambus. The second tape was a copy of the first tape containing only the purchase Whitefoot made from Rambus. Both were allowed into evidence. The original videotape was allowed into evidence during rebuttal as a means of showing all the purchases Whitefoot made that night were cocaine purchases. The judge also noted the defense questioned some of the State's witnesses on cross-examination about these other purchases; in effect opening the door for this evidence. The State claimed the original videotape was available for defense counsel at any time, and Rambus watched the copy of the transaction involving him with Huffman.
¶ 17. Rambus does not argue he was denied a chance to see the videotape of the purchase involving him. Instead, Rambus claims he was denied the chance to see the videotape of all of the purchases made by Whitefoot. Because of this, Rambus believes *1059 his conviction should be overturned. It was noted in the record that when the prosecution began to show the original videotape to the jury, the trial court was forced to make Rambus sit at the defense counsel's table. This was done because Rambus was leaning into the jury box and getting very close to the jurors. Rambus then watched the remainder of the video while sitting at the defense table. Because of this, the argument that Rambus was somehow denied his right to confront a witness by being forced to sit down is not very persuasive.
¶ 18. The remaining question then is whether the tape should have been allowed into evidence and whether the tape being admitted into evidence denied Rambus a fair trial. Rambus knew of the video copy of the transaction involving only himself. During the cross-examination of Craig Taylor, defense counsel asked if Whitefoot had made other buys on April 29, 1997, and Taylor answered Whitefoot had made other buys. Defense counsel also asked Taylor if these other buys were videotaped. Taylor answered the question by stating the other transactions were videotaped. During the cross-examination of both Taylor and Whitefoot, Rambus's counsel tried to cast doubt on the fact Whitefoot only bought cocaine. The prosecution sought to rebut this inference by introducing the entire tape. The trial court held Rambus had opened the door to this type of evidence by making reference to the other drug sales.
¶ 19. This Court agrees with the trial court. Rambus could have very easily learned of the existence of the complete videotape by talking to the officers involved in the sale. The fact defense counsel made reference to the other transactions is evidence defense counsel did know of the other transactions. No evidence was put forth by Rambus indicating the original tape was wrongly withheld by the prosecution, and the State pointed out in Taylor's redirect that the tape was available for Rambus's counsel to view any time. Also, Rambus's attorney opened the door for evidence of the other sales to come in by mentioning the other sales on cross-examination. Evidence of the other crimes would have been inadmissible if the State had tried to offer it into evidence during its case, but because the defense opened the door by mentioning these other crimes, the State would be allowed to introduce this evidence on rebuttal. Mills v. State, 763 So.2d 924(¶ 20) (Miss.Ct.App. 2000).
¶ 20. As indicated above, this Court will not overrule a trial court's decision to allow something into evidence unless we find an abuse of discretion. Dobbs, 726 So.2d at (¶ 25). This Court finds no abuse of discretion in the trial court's decision to allow the videotape of all of Whitefoot's sales into evidence. Thus, we uphold the trial court's decision to admit the tape and affirm Rambus's conviction.

3. WHETHER THE COURT ERRED IN REFUSING TO ALLOW JURY INSTRUCTION D-1 AND FURTHER ERRED IN ALLOWING THE DEFENDANT'S MOTION FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL AS THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 21. Under this issue, Rambus is basically making attacks on the sufficiency and weight of the evidence. In dealing with attacks on the sufficiency of the evidence, the standard to be applied is that credible evidence consistent with guilt must be accepted as true. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Taking this into account, the evidence in *1060 this case clearly is sufficient to support the jury's verdict. The State laid out the facts of the crime very plainly. The testimony presented by Rambus in an attempt to prove the substance was marijuana and not cocaine was shown to be either biased or contradicted by earlier statements. Taking the evidence presented in this trial, it is apparent a reasonable juror could find Rambus guilty of this crime. Therefore, this Court holds Rambus's guilty verdict was sufficiently upheld by the evidence, as was the trial court's denial of a JNOV.
¶ 22. The attack Rambus makes on the trial court's failure to grant a new trial raises a challenge to the weight of the evidence. In deciding whether a jury verdict is against the overwhelming weight of the evidence, the standard applied by this Court is to accept as true the evidence supporting the verdict and reverse only when convinced the circuit court has abused its discretion in failing to grant a new trial. Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989). Once again, taking the evidence in this case supporting the jury verdict as true, it is evident there was no abuse of discretion by the judge denying a new trial. Rambus argues because he presented more witnesses who claimed to witness the crime than the State did, his conviction should be reversed. This argument ignores the fact two of the witnesses admitted to being friends with Rambus, and Bennett admitted in prior statements he did not know Rambus prior to the sale. The issue of credibility is for the jury to decide, and in this case they found against Rambus. Brown v. State, 763 So.2d 207 (¶ 4) (Miss.Ct.App.2000). There was no abuse of discretion present in this case because the verdict was supported by the weight of the evidence. Therefore, this Court affirms the trial court's denial of Rambus's motion for a new trial.

4. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTION TO THE STATE'S MOTION TO AMEND THE INDICTMENT TO REFLECT HABITUAL OFFENDER STATUS UNDER MISSISSIPPI CODE ANNOTATED SECTION 99-19-83?
¶ 23. Rambus argues it was improper for the trial court to allow the prosecutor to amend Rambus's indictment to reflect his status as a repeat offender. Rambus claims this violated his Eighth Amendment right against cruel and unusual punishment because this made his sentence amount to a life sentence. Rambus offered no evidence indicating an Eighth Amendment violation. In addition, Rambus claims the prosecutor used the threat of a sentence under the repeat offender statute to make Rambus plead guilty. There is no indication of any such threat being made in the record of this case, and as we are bound to rule only on things found in the record then we cannot rule on this supposed threat. Colenburg v. State, 735 So.2d 1099(¶ 6) (Miss.Ct.App.1999).
¶ 24. Getting to the amendment itself, an indictment can be amended when the amendment goes to form and not to substance. Burson, 756 So.2d (¶ 14). When deciding whether an amendment goes to form or substance, this Court looks to see if the defenses the defendant had originally are equally available to the defendant after the amendment is made. Eakes, 665 So.2d at 859-60. After looking at the record in this case it becomes clear the same defenses were available to Rambus after the indictment was amended as were available before the amendment. Rambus would have the same defenses available to him in this case whether he was a repeat offender or not. For this reason, the amendment in this case goes to form and not to substance, and thus would be allowed under Mississippi law. Also, *1061 the Uniform Circuit and County Rules allows an indictment to be amended so a defendant may be charged with habitual offender status. U.C.C.R.P. rule 7.09. Therefore, the trial court was not in error in allowing Rambus's indictment to be amended to reflect his repeat offender status. We affirm as to this issue.

5. WHETHER THE COURT ERRED IN ALLOWING THE STATE TO MAKE AN IMPROPER CLOSING ARGUMENT?
¶ 25. Rambus claims the prosecutor made improper arguments in his closing by making statements Rambus considered inflammatory. Specifically Rambus refers to a section of the prosecution's rebuttal closing in which the prosecutor, Mr. Kitchens, stated, "You know what, if we have to pay a hundred dollars for every sale of cocaine case to take this off the street, then it's worth it because you know what, tonight no old lady will be strangled to death over this cocaine." Rambus claims this was prejudicial because at the time of trial, several people had been killed in Clay County in drug related incidents.
¶ 26. Rambus failed to preserve this issue for trial by not objecting to the prosecution's statement at the time it was made. "Procedurally, contemporaneous objections `must be made to allegedly prejudicial comments during closing argument or the point is waived.'" Longmire v. State, 749 So.2d 366(¶ 8) (Miss.Ct.App. 1999) (quoting Millender v. State, 734 So.2d 225(¶ 29) (Miss.Ct.App.1999)). Since Rambus failed to make a contemporaneous objection, this issue is hereby treated as waived.
¶ 27. Despite the procedural bar, Rambus's argument is without merit. As stated above, the proper standard to apply in circumstances such as this is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created. Sheppard v. State, 777 So.2d 659(¶ 7) (Miss.2001). Rambus claims these statements created unjust prejudice against him, thus causing a prejudiced decision. We disagree. First of all, this Court can only act upon facts contained in the official record and not on observations made in briefs. Colenburg v. State, 735 So.2d 1099(¶ 6) (Miss.Ct.App.1999). While the prosecutor's statement is in the record, there is no further evidence of this claim in the record. As such, there is no way to know whether these facts would be prejudicial to Rambus or not. In addition, the prosecution provided the jury with plenty of evidence upon which to rest Rambus's conviction. This Court believes the guilty verdict Rambus received was due more to the evidence presented at trial than any imaginary prejudice Rambus mistakenly believes exists. Therefore, because this issue is procedurally barred and because it is without merit, we affirm Rambus's guilty verdict as to this issue.

6. WHETHER THE REPRESENTATION OF THIS DEFENDANT BY HIS TRIAL ATTORNEY WAS INEFFECTIVE?
¶ 28. Rambus cites two grounds for a finding of ineffective assistance of counsel in this case. First Rambus claims a statement made by his attorney during a "talking objection" was proof of ineffective assistance of counsel. Rambus's attorney objected to some of Whitefoot's testimony during the rebuttal phase of the trial and suggested the contents of Whitefoot's testimony should be heard outside the presence of the jury Rambus's attorney did this because some of this testimony might have been damaging. Rambus claims his trial counsel's statement about some of the testimony being "damaging" was evidence of ineffective assistance of counsel. This is not true. There was no content in this *1062 statement that could have been damaging. There were no references to specific facts that could have prejudiced the jury. The statement simply referred to testimony that may need to be heard outside the presence of the jury. We give a great deal of deference to attorneys in deciding whether an attorney's conduct falls within the realm of reasonable professional assistance, and we see no reason to find Rambus has overcome this presumption. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). This statement was not deficient because it shows Rambus's attorney was trying to protect his client from testimony which might have been prejudicial, and because of this Rambus's claim fails the first prong of the Strickland test. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 29. The second claim of ineffective assistance of counsel Rambus makes is his attorney's failure to be familiar with the second videotape presented on rebuttal. Though this failure to be familiar with the tape could be considered a deficiency, Rambus's claim still fails because he fails to meet the second prong of the Strickland test. Besides showing a deficiency, Rambus must also prove the deficiency prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The right to counsel does not guarantee the right to errorless counsel. Carter v. State, 775 So.2d 91(¶ 10) (Miss.1999) (quoting Foster v. State, 687 So.2d 1124, 1129-30 (Miss.1996)). Thus, even though it might have been an error in judgment by Rambus's attorney in not being familiar with both tapes, it does not render the assistance of his counsel ineffective. For this reason, this Court holds Rambus received effective assistance of counsel. Thus, we affirm the trial court.

CONCLUSION
¶ 30. After review of this case, this Court finds the trial court was not in error in denying Rambus's motion for a mistrial or in allowing the entire videotape into evidence. We find Rambus's conviction was sufficiently supported by the evidence and was not against the overwhelming weight of the evidence. The trial court was further correct in allowing the State to amend Rambus's indictment. This Court holds Rambus failed to preserve his right to appeal the statements made by the State in its closing and also that Rambus received effective assistance of counsel.
¶ 31. THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE WITHIN 1500 FEET OF A CHURCH, AND SENTENCE, AS A HABITUAL OFFENDER, TO LIFE IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS HEREBY AFFIRMED. COST OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.