907 So.2d 389 (2005)
Kenneth SMITH a/k/a Kenneth Allen Smith, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01063-COA.
Court of Appeals of Mississippi.
February 8, 2005.
Rehearing Denied May 17, 2005.
Certiorari Denied July 21, 2005.
*391 Jack R. Jones, Southaven, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Kenneth Allen Smith was convicted by a jury in the DeSoto County Circuit Court for the crime of fondling a child, in violation of Mississippi Code Annotated Section 97-5-23(1) (Rev.2000) and for the *392 crime of sexual battery to a child between the ages of fourteen and sixteen, in violation of Mississippi Code Annotated Section 97-3-95(1)(c) (Rev.2000). The circuit court judge sentenced Smith to twenty years for the battery conviction, with five years suspended, and he sentenced Smith to fifteen years for the fondling conviction, with the sentences to run concurrently. The judge denied Smith's requests for appeal bond and for parole eligibility. Smith appeals, raising the following issues:
I. WHETHER PLAIN ERROR EXISTS IN THE ADMISSION OF SMITH'S STATEMENT
II. WHETHER THE CIRCUIT JUDGE ERRED IN FAILING TO GRANT A NEW TRIAL ON THE GROUNDS THAT THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
III. WHETHER THE CIRCUIT JUDGE ERRED IN DENYING THE DEFENDANT THE RIGHT TO QUESTION THE STATE'S WITNESSES ABOUT THEIR REFUSAL TO SPEAK TO DEFENSE COUNSEL PRIOR TO TRIAL
IV. WHETHER THE CIRCUIT JUDGE IMPROPERLY REFUSED SMITH'S REQUEST FOR A JURY INSTRUCTION OF A LESSER OFFENSE
V. WHETHER THE STATE'S COMMENT IN CLOSING ARGUMENT WARRANTS THE GRANT OF A NEW TRIAL
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Kenneth Smith was the business partner of the father (Father) of victim G.P and worked at American Billboard Painting. Father was good friends with Smith and his family, having known each other from church. Smith had a son and a daughter. G.P. would spend time with Smith's children, and Smith would often take G.P. out with him and his family. This complaint arose when an employee discovered child pornography on Smith's business computer. Father called the police, and the Horn Lake Police Department initiated an investigation on Smith.
¶ 4. At the time, G.P. went to Horn Lake Middle School, and she was best friends with K.E. Smith frequently went places with G.P. and K.E and with other kids. G.P. testified that Smith often told them to perform sexual acts on him, and he once told G.P. to kiss her friends.
¶ 5. G.P. testified that on one occasion, Smith placed his hand between G.P.'s legs without her consent, but she did not stop him because she was scared. "He slid his hand down my pants before and up in under my panties." After this incident, Smith told her not to tell anyone and to keep her mouth closed like a zipper. Smith also gave her a pair of black thong underwear and wanted her to model them for him. At the time of the commission of the crimes, Smith was thirty seven years old, and G.P. was fourteen years old.
¶ 6. Smith was also indicted for engaging in sexual penetration with K.E, who was also fourteen years old at the time of the commission of the crimes. K.E. testified that Smith made frequent sexual comments and would ask her and G.P. to touch each other on their private parts. On one occasion, he stopped the car and refused to go any farther until they kissed. While they kissed, he grabbed himself and made sexual noises. K.E. testified that while she was at Smith's office, Smith unzipped her pants and put his finger in her vagina. She pulled away and went into another room. She testified that she did not tell anyone because she was scared that Smith *393 would tell her parents that she smokes cigarettes.
¶ 7. After a trial in the DeSoto County Circuit Court, Smith was convicted for the crimes of fondling a child and sexual battery, in violation of Miss.Code Ann. § § 97-5-23(1) and 97-3-95(1) respectively.

ANALYSIS

I. WHETHER PLAIN ERROR EXISTS IN THE ADMISSION OF SMITH'S STATEMENT
¶ 8. At the trial Danielle McKenzie, a detective for the Horn Lake Police who investigated the case, testified that Smith made a statement to the effect that anything between him and the girls was consensual. Although Smith concedes that no objection to the testimony was made at trial, he wishes to raise the issue on appeal. If a contemporaneous objection is not made, an appellant must rely on plain error to raise the argument on appeal. Watts v. State, 733 So.2d 214, 233(¶ 53) (Miss.1999). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Williams v. State, 794 So.2d 181, 187 (Miss.2001) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). "Further, this Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights." Id. (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991)). Because it is undisputed that no objection was raised at trial, Smith solely relies on the plain error rule to raise this issue on appeal.
¶ 9. Our analysis of the plain error rule includes a determination of whether there is, in fact, "error," that is, some deviation from a legal rule. United States v. Olano, 507 U.S. 725, 732-33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Smith contends that the admission of his statement to McKenzie is error because Smith made the statement in the absence of Miranda warnings. The statement was given on June 24, 2002, according to McKenzie's detective case narrative. Smith was arrested on June 21, 2002, and received Miranda warnings on that day. Smith argues that his statement to McKenzie was inadmissible for two reasons. First, he was never given new Miranda warnings on June 24, 2002. Second, Smith concedes that McKenzie did not ask him questions on June 24, 2002. Instead, McKenzie explained the case to him, the crimes for which he was being arrested, and the accusations from the girls. Smith argues that these statements are nevertheless the functional equivalent of questioning because the statements could have reasonably resulted in an expression or statement by Smith. See Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
¶ 10. This alleged Miranda violation did not rise to the level of plain error. "The plain error doctrine has been construed to include `anything that seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Porter v. State, 749 So.2d 250, 261 (Miss.Ct.App. 1999) (quoting Olano, 507 U.S. at 736, 113 S.Ct. 1770). The error of which Smith complains does not rise to this level. With sexual crimes involving children, consent is not an element that the State must prove, and in this case, the jury did not consider the issue of consent. It is therefore extremely unlikely that the jury's verdict would have been any different without the admission of this statement. Smith had ample opportunity to exclude this statement, but he did not. He filed a motion in limine to exclude certain testimony, but he did not move to exclude this statement. There was no mention whatsoever of any Miranda violation during trial. Smith *394 even had the opportunity to testify as to what he meant by the comment he made to McKenzie.
¶ 11. We find that McKenzie's testimony regarding admission of Smith's statement was, at most, harmless error. In the Miranda context, harmless error is found "when the whole record demonstrates beyond a reasonable doubt that it was without prejudicial substantial effect under all the facts and circumstances of this case." Hopkins v. State, 799 So.2d 874, 879(¶ 10) (Miss.2001) (citing United States v. Whitaker, 592 F.2d 826, 830 (5th Cir.1979)). "The decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." Id. (quoting United States v. Dixon, 593 F.2d 626, 629 (5th Cir.1979)). In this case, we are unable to find any evidence that Smith was prejudiced by McKenzie's statement.
¶ 12. Smith further avers that his fundamental rights were violated because McKenzie's statement led him to testify. Smith claims that he decided that he needed to testify in order to explain McKenzie's statement. Smith wished to explained that the consensual activity was between the girls and not between him and the girls. If McKenzie had not testified as to this statement, then Smith claims he might not have testified. Therefore, Smith claims that his right against self-incrimination as guaranteed under the Fifth Amendment of the United States Constitution was violated.
¶ 13. We are unable to find any evidence supporting his allegation that his decision to testify was in response to McKenzie's testimony. The circuit judge specifically asked Smith whether it was his desire to testify. Smith admitted that he understood all the ramifications of choosing to testify, and that it was his desire to take the stand. Smith gave no indication that he wished to testify for the sole purpose of explaining McKenzie's testimony. Smith's direct-examination was primarily devoted to his efforts to deny that he ever acted inappropriately towards the victims and to discredit the victims' testimony. A very small part of the direct-examination was devoted to Smith's explanation of his comment to McKenzie.
¶ 14. Even accepting as true Smith's assertion that he might not have otherwise taken the witness stand, we find no violation of Smith's Fifth Amendment rights. "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). This issue is without merit.

II. WHETHER THE CIRCUIT JUDGE ERRED IN FAILING TO GRANT A NEW TRIAL ON THE GROUNDS THAT THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 15. Smith argues that the jury verdict is against the overwhelming weight of the evidence because he claims that the testimonies of G.P. and K.E were considerably impeached. G.P. initially denied that Smith improperly touched her. She later told the investigating detective that she was improperly touched while she and Smith were on the way to a local restaurant. In court, G.P. stated that she was improperly touched during a car ride while being taken home. K.E. testified that she *395 was afraid to tell the police about Smith's conduct because Smith knew she smoked cigarettes, and Smith threatened to tell her parents about her smoking if K.E. told the police. Smith argues that K.E.'s accusations were fabricated because K.E.'s story was revenge for Smith's threats to tell her parents.
¶ 16. Smith complains that the jury verdict was against the weight of the evidence because the testimony of the girls was not believable. However, the credibility of the witnesses is one for the jury to resolve. "The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity." Noe v. State, 616 So.2d 298, 303 (Miss.1993). "Seldom do witnesses agree on every detail. Indeed, their failure to do so is often strong evidence each is trying to portray the situation as he saw it, and that is to the credit, rather than the discredit of the witnesses." Id. at 302.
¶ 17. It is common for a victim of sexual abuse to be embarrassed and to initially deny that the crimes occurred. In fact, Father testified that G.P. did not deny anything but simply did not tell him everything at first. The jury could easily infer that G.P. did not want to be in trouble with her father and also that she was reluctant to tell her father about the incidents because Smith told her that he would report her smoking. The jury assessed the witnesses' respective testimonies and concluded that the testimony was sufficiently credible to warrant a conviction. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Benson v. State, 551 So.2d 188, 193 (Miss.1989)). This Court reverses only when the circuit court has abused its discretion in refusing to grant a new trial. Id. (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). We find no error in the circuit court's finding that the jury verdict was supported by the evidence.

III. WHETHER THE CIRCUIT JUDGE ERRED IN DENYING THE DEFENDANT THE RIGHT TO QUESTION THE STATE'S WITNESSES ABOUT THEIR REFUSAL TO SPEAK TO DEFENSE COUNSEL PRIOR TO TRIAL
¶ 18. Before the trial took place, Smith's attorney attempted to interview the victim witnesses about their allegations. The girls chose not to speak with Smith's attorney. At trial, Smith's attorney requested that the judge allow questioning about their refusal to speak with him. The judge did not allow such questioning because the girls were nervous and upset with Smith's attorney. Smith's attorney wanted to cross-examine the girls in order to show their bias. Smith contends that such a denial constitutes reversible error because he believes such a denial substantially affects his right to cross-examine witnesses.
¶ 19. We are aware that this State provides defendants with the broad right to question prosecution witnesses "regarding possible motives, prejudices, or biases, in attempting to uncover every detail which might bear upon the weight and worth of his/her testimony." Cook v. State, 728 So.2d 117, 120(¶ 4) (Miss.Ct.App. 1998). However, a circuit court judge has wide discretion in limiting cross-examination on a collateral issue. "[T]he exclusion of information which is either wholly extraneous to the charges laid in the indictment and/or unprovoked by the witness' direct testimony lies within the discretion of the trial judge." Id. (citing Black v. State, 506 So.2d 264, 268 (Miss.1987); Stringer v. *396 State, 500 So.2d 928, 933 (Miss.1986)). Smith's attorney wished to cross-examine the victim witnesses on matters that were not elicited in the witnesses' direct-examination testimony, for the sole purpose of impeaching these witnesses. The circuit judge's decision to limit the scope of cross-examination was therefore within his sound discretion. Except for the judge's refusal to allow questioning on the victim witnesses' refusal to talk to Smith's attorney, Smith was afforded full cross-examination on the victim witnesses. We find no reversible error.

IV. WHETHER THE CIRCUIT JUDGE IMPROPERLY REFUSED SMITH'S REQUEST FOR A JURY INSTRUCTION OF A LESSER OFFENSE
¶ 20. There was testimony at trial that Smith gave cigarettes to G.P. and K.E. and allowed the girls to smoke. On this evidence, Smith proposed jury instruction D-5, contributing to the delinquency of a minor. This instruction was intended as a lesser included offense of the charge of sexual battery of a minor. The judge refused to give this instruction because Smith was never charged with this crime.
¶ 21. We recognize that Smith is entitled to have jury instructions on his theory of the case presented, even if the evidence that supports it is weak, inconsistent, or of doubtful credibility. Ellis v. State, 778 So.2d 114, 118(¶ 15) (Miss.2000) (citing Giles v. State, 650 So.2d 846, 854 (Miss.1995)). However, we find that Smith's theory of the case does not meet this threshold.
¶ 22. Smith never denied letting the girls smoke. He did deny engaging in sexual activities with the girls. In Wright v. State, 856 So.2d 341 (Miss.Ct.App.2003), the defendant, who was convicted of statutory rape, argued that the circuit court erred in refusing to give the lesser-included jury instruction on contributing to the delinquency of a minor. We affirmed because we recognized that the defendant must point to some evidence in the record that would have allowed the jury to find him not guilty of statutory rape, and simultaneously, find him guilty of contributing to the delinquency of a minor. Id. at 343(¶ 6). We find no evidence that would allow the jury to convict Smith for contributing to the delinquency of a minor instead of sexual battery and fondling. Smith's crime in giving cigarettes to the girls was a separate occurrence from Smith's sexual crimes. Therefore, Smith's respective crimes do not arise "out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment." Whitehurst v. State, 540 So.2d 1319, 1327 (Miss.1989).
¶ 23. "Only where the evidence could only justify a conviction of the principal charge should a lesser offense instruction be refused." Taylor v. State, 577 So.2d 381, 383 (Miss.1991) (citations omitted). It is common in our courts for a defendant to be convicted of sexual crimes against children and receive separate convictions for contributing to the delinquency of a minor. McCarty v. State, 554 So.2d 909 (Miss.1989); Brown v. State, 534 So.2d 1019 (Miss.1988); Lofton v. State, 818 So.2d 1229 (Miss.Ct.App.2002). For this reason, we find that contributing to the delinquency of a minor is not a lesser included instruction for sexual battery and fondling. This issue is without merit.

V. WHETHER THE STATE'S COMMENT IN CLOSING ARGUMENT WARRANTS THE GRANT OF A NEW TRIAL
¶ 24. During the State's closing argument, the prosecutor stated that criminals commit horrible acts but sometimes put on a coat and tie to look like the rest of *397 the world. Smith's attorney objected on the grounds that the prosecutor's comments were improper, and the circuit judge instructed the jury to disregard this comment. Smith argues that the comment was prejudicial nevertheless and warrants a new trial.
¶ 25. The State and defense counsel are given wide latitude in their closing arguments to a jury. "Courts should be very careful in limiting the free play of ideas, imagery and the personalities of counsel in their argument to a jury." Johnson v. State, 477 So.2d 196, 209 (Miss.1985). It is the duty of trial counsel, when opposing counsel makes an objectionable comment, to promptly make objections and insist upon a ruling by the trial court. If the objection is sustained, it is further the duty of trial counsel to move for a mistrial. Id. at 210.
¶ 26. "The circuit judge is in the best position to weigh the consequences of the objectionable argument, and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment." Id. In other words, in most situations, putting the jury on notice of an improper comment is sufficient to cure any prejudice to a defendant. We are unable to find any harm that would entitle Smith to a new trial. When a defendant requests a new trial, "[i]t is the duty of the movant to support his motion by proof, and in the absence of proof in support of the motion, the presumption in favor of the correctness of the action of the trial court will prevail." Boyles v. State, 778 So.2d 144, 146(¶ 6) (Miss.Ct.App.2000) (quoting Dean v. State, 300 So.2d 797, 801 (Miss.1974)). There is no reason to believe that the jury was prejudiced by the State's improper comment. This assignment of error is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT II SEXUAL BATTERY OF A CHILD AND SENTENCE OF TWENTY YEARS WITH FIVE YEARS SUSPENDED, AND COUNT I FONDLING OF A CHILD AND SENTENCE OF FIFTEEN YEARS, SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.